# EXHIBIT A

IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

BEVERLY CAMERON,
    Plaintiff,

CASE NO.: 19-CC-001597
DIVISION: M

v.

THE BANK OF MISSOURI,
A foreign corporation
    Defendant.
_____/

## AMENDED COMPLAINT

COMES NOW the Plaintiff, BEVERLY CAMERON, by and through the undersigned counsel, and sues Defendant, THE BANK OF MISSOURI, and alleges:

**Jurisdiction & Venue**

1. This is an action for damages that exceeds $8,000.00 but does not exceed $30,000.00 exclusive of attorney's fees and costs.

2. Jurisdiction and venue for purposes of this action are conferred by Florida Statute §559.77 and 47 U.S.C. 227.

3. At all material times herein, the Plaintiff, BEVERLY CAMERON, was a resident of Hillsborough County, Florida.

4. At all material times herein, the conduct of the Defendant, THE BANK OF MISSOURI, complained of below, occurred in Hillsborough County, Florida.

5. At all material times herein, the Defendant, THE BANK OF MISSOURI, engaged in its usual and customary business within Hillsborough County, Florida, which included but is not limited to the marketing issuance and servicing of credit cards under the moniker TOTAL VISA.

6. At all material times herein, the Defendant, THE BANK OF MISSOURI's, predecessor, MID-AMERICA BANK & TRUST, engaged in its usual and customary business within Hillsborough County, Florida, which included but is not limited to the marketing issuance and servicing of credit cards under the moniker TOTAL VISA.

**Facts Common to All Counts**

7. At all material times herein the Plaintiff had use of and access to a TOTAL VISA credit card account that was originally issued by MID-AMERICA BANK & TRUST the Plaintiff held a TOTAL VISA credit card issued and serviced by the Defendant with last four digits of the account at issue being XXX4890, hereinafter referred to as "THE VISA ACCOUNT."

8. At all material times herein, MID-AMERICA BANK & TRUST, merged with the Defendant THE BANK OF MISSOURI, such that the accounts of MID-AMERICA BANK & TRUST, including those of the Plaintiff, were then owned and serviced by the Defendant, THE BANK OF MISSOURI.

9. That in the first week of September 2018, the Plaintiff advised the Defendant that she lost her employment and source of income was unable to make payment to the Defendant on THE VISA ACCOUNT.

10. That after receiving several telephone calls from the Defendant in an effort to collect on THE VISA ACCOUNT, after previously advising the Defendant of her unemployment and lack of income, the Plaintiff specifically advised the Defendant that she did not have the ability to pay any money whatsoever towards THE VISA ACCOUNT and demanded that the Defendant cease and desist any further collection calls or further telephone contact with her in regard to THE VISA ACCOUNT and that any other contact occur through written format.

11. That after plainly and clearly demanding that the Defendant cease and desist further collection telephone calls or other collection oriented contact with her on THE VISA ACCOUNT, the Defendant willfully and intentionally ignored the Plaintiff's clear directive and persisted in contacting her telephonically in excess of ninety (90) times between the month of September and November 2018, alone. This included many instances where up to five (5) telephone calls a day were placed by the Defendant to the Plaintiff in an effort to collect the monies claimed to be owed on THE VISA ACCOUNT from the Plaintiff. The Defendant continues to telephonically contact the Plaintiff in regard to the account with a similar and ongoing frequency.

12. At all material times herein, the Defendant did and continues to willfully and intentionally ignore the repeated demands by the Plaintiff that the Defendant cease and desist telephone based collection calls directed to her and her cell phone.

13. At all material times herein, the Defendant was aware and remains aware that the telephone number it was using to contact the Plaintiff was a cellular telephone line and not a traditional "land line" and that repeated calls to her cellular phone would adversely interfere in her daily activities and privacy through continued and unwanted interruptions. Moreover, the Defendant was aware and remains aware that its efforts would adversely impair various services paid for by the Plaintiff such as voicemail messaging and could carry result in additional financial charges or loss of valuable purchased minutes or data amounts against her account.

14. That as part and parcel of the collections campaign directed against the Plaintiff, the Defendant, willfully and purposefully used various and sundry telephone numbers, and in some instances appear to have used "caller ID spoofing," as a collections strategy to dupe the Plaintiff into accepting unwanted further communication with the Defendant under false pretense by disguising the telephone numbers associated

with the contact at issue. In one or more of these instances the "caller ID" was also blocked or altered in a manner so as to deceive the Plaintiff as to the actual identity of the Defendant as the caller.

15. That at no material time herein time was MID-AMERICA BANK & TRUST licensed or authorized to transact any business, including that of a financial institution, in or throughout the State of Florida nor registered or authorized as a banking entity by the State of Florida or its regulatory entities such as the Office of Financial Regulation.

16. That at no material time herein time was THE BANK OF MISSOURI licensed or authorized to transact any business, including that of a financial institution, in or throughout the State of Florida nor registered or authorized as a banking entity by the State of Florida or its regulatory entities such as the Office of Financial Regulation.

17. The Plaintiff has retained the undersigned attorney for the purpose of pursuing this matter against the Defendant and is obligated to pay said attorney a reasonable fee for his services. Further, Florida State Statute Section §559.77 provides for an award of attorney fees in favor of the Plaintiff should she prevail in this matter.

18. All conditions precedent to the filing of the action have occurred or have been waived by the Defendant.

## Count I
(Violation of the Florida Consumer Collection Practices Act)

The Plaintiff re-alleges paragraphs one (1) through eighteen (18) as if fully restated herein and further states as follows:

19. At all times herein, the Defendant, THE BANK OF MISSOURI, was a person under the Florida Statute Chapter §559.72.

20. At all material times herein the debt sought to be collected by the Defendant was a consumer debt subject to the provisions of the Florida Consumer Collection Practices Act, Fla. Stat. Chap. 559.

21. That at all material times herein the Defendant willfully engaged in conduct reasonably expected to harass an abuse the Plaintiff in an effort to collect a consumer debt.

22. That the collection campaign and strategy of the Defendant, was and remains intended to coerce and bully the Plaintiff into making payment to the Defendant based upon primarily if not exclusively upon a desire or effort to have the Defendant cease the offending actions and conduct and not based upon the reasoned determination of the Plaintiff otherwise.

23. The Defendant, THE BANK OF MISSOURI, is subject to and has violated the provisions of Florida Statute § 559.72(7).

24. As a direct and proximate result of Defendant's actions, the Plaintiff has sustained damages as defined by Florida Statute Section §559.77.

WHEREFORE, **Plaintiff demands a trial by jury of all issues so triable** and judgment against Defendant, THE BANK OF MISSOURI, for damages, costs, interest, attorney fees, injunctive relief, and such other relief this Court deems appropriate.

## COUNT II
(Violation of the Federal Telephone Communications Protection Act)

The Plaintiff re-alleges paragraphs one (1) through eighteen (18) as if fully restated herein and further states as follows:

25. At all material times herein the Plaintiff had a reasonable right to an expectation of privacy and security in regard to her personal life and within the sanctity of her home.

26. That the Plaintiff's sole means of telephone contact was and remains a cellular phone she uses for her personal communications.

27. That the Defendant placed so many telephone collection calls to the Ms. CAMERON, that she was forced to place her cellphone on silent mode, simply to avoid the abuse and annoyance of the barrage of telephone calls received.

28. That at no material point in time did the Defendant have "express consent" to place calls to her cellular phone.

29. That the Plaintiff directly verbally demanded that the Defendant cease continued telephone contact as stated to agents of the Defendant involved in such telephone collection calls.

30. That based on the nature and circumstances associated with the telephone calls placed to the Plaintiff by the Defendant, it is readily apparent that the Defendant's telephone contacts were the result of the use of an automated or predictive dialer system. These circumstances include but are not limited to:

    a. The frequency of the telephone calls, both on a daily basis and collectively;

    b. The propensity for additional telephone calls to be placed to the Plaintiff, often within minutes of speaking to a live collector or associate, and even after demanding no further telephone contact specifically, as if the conversation with the live collector never took place;

    c. The propensity for such calls to be "dead calls" where the Plaintiff would answer same and no live person would be on the line to respond;

    d. The propensity for such calls to leave or attempt to leave automated voice messages for the Plaintiff in regard to the account ;

    e. That many of the calls placed to the Plaintiff by the Defendant involved the use of "caller ID spoofed" numbers, which is a function attendant to the use of computerized automated or predictive telephone dialers or VOIP telephone services attendant to same. The Plaintiff received numerous calls from various telephone numbers, with different area codes, often located over seas, in other states and even falsely portrayed as arising within the same area code of her residence, all intended to dupe the Plaintiff into further communications with the Defendant, despite her desires otherwise.

    f. That many of the telephone numbers reflected on the Plaintiff's caller ID that are attributed to the Defendant, are revealed as "dead lines" or outgoing only lines, such that when called back directly, as opposed to the telephone numbers otherwise left in voicemail for a return call, consumers such as the Plaintiff are greeted with dead air or computerized messages advising that he number is unavailable for messages or not in service.

31. That at all material times herein the Defendant was subject to and obligated to comply with the provisions of the Federal Telephone Communications Protection Act, 47 U.S.C. 227.

32. That at all material times the use and implementation of an autodialer telephone system by the Defendant was focused on a policy, formal or informal, of maximizing the collections pressure and harassment meted out to debtor consumers while minimizing both the expense, effort and necessary oversight associated with traditional collections activity.

33. That as recognized by the FCC, wireless customers subjected to automatic telephone dialer systems (ATDS) are inherently harmed by exhaustion of the consumers telephone minutes. In addition, consumers such as the Plaintiff incur data plan usage reductions from purchased products like voice to txt messages, financial penalties or assessment by the cellular service provider, reduction of access or use of purchased voicemail accounts resulting in missed contacts, and

reduction of battery life or cellular phone equipment from use or activation of the Plantiff's cellular telephone at the instigation of the Defendant.

34. That at all material times herein the Defendant was a remains specifically aware or proscribed conduct set forth the Federal TCPA and further willfully, maliciously and intentionally orchestrated a policy and procedure intended the thwart the protections afforded to consumers, such as the Plaintiff.

35. As a direct and proximate result of Defendant's actions, the Plaintiff has sustained damages as defined by Florida Statute Section §559.77.

36. That the Defendant's repeated placement of unauthorized, unconsented and non-emergent telephone calls to the Plaintiff's cell phone using an automatic telephone dialing system (ATDS) to the wireless or cellular telephone number of the Plaintiff was a violation of 47 U.S.C. 227(b)(1)(A)(iii), the Federal Telephone Communication Protection Act (TCPA).

37. That as a direct and proximate result of the Defendants violation of the TCPA, and in particular section 47 U.S.C. 227(b)(1)(A)(iii), the Plaintiff is entitled to damages as provided under 47 U.S.C. 227(b)(3)(B), which provides damages in the amount of $500.00 per telephone call illegally placed to the Plaintiff.

38. That the Plaintiff is entitled to recover treble damages for the Defendant's willful or knowing violation of the TCPA.

39. That the Plaintiff is entitled to seek injunctive relief to prevent the Defendant from engaging in further and ongoing violations of the TCPA.

WHEREFORE, **Plaintiff demands a trial by jury of all issues so triable** and judgment against Defendant, THE BANK OF MISSOURI, for damages, treble damages as provided by law, costs, interest, attorney fees, injunctive relief, and such other relief this Court deems appropriate

_____
Mark T. Tischhauser, Esquire
The Tischhauser Law Group
6301 Memorial Highway, Suite 200
Tampa, Florida 33615
Telephone: (813) 243-9233
Facsimile: (813) 243-9234
Email: service@tischhauserlaw.com
FBN: 870676
Attorney for Plaintiff